## AN INVALID ACT RELATING TO SEWAGE DISPOSAL.

Circuit Court of Darke County.

THE CITY OF GREENVILLE v. M. G. DEMOREST ET AL.

Decided, April 28, 1911.

*Constitutional Law—Invalidity of the Act Requiring the Purification of Sewage and Protection of Streams from Pollution—Classification of Subjects and Uniformity of Operation—Sections 1249 et seq., General Code, and Section 26, Article II of the Constitution.*

1. Section 1249, *et seq.*, General Code, authorizing the state board of health to require the purification of sewage and public water supplies and to protect streams against pollution, lacks uniformity of operation by reason of the exception which is made of Ohio river cities from the operation of the law under certain conditions; and the invalidity of the exception is of such a character as to affect the entire act and bring it within the inhibition of Section 26 of Article II of the Constitution.

2. Moreover the penalty clause, directed at members of council for failure to take the steps required to carry out the orders of the state board of health, is also open to constitutional objection for the reason that it is directed against a legislative body and is destructive of the fundamental theory of government in that it substitutes to that extent the state board of health as the governing board in the place of council.

*D. W. Bowman* and *J. C. Elliott*, City Solicitor, for plaintiff.
*T. S. Hogan*, Attorney-General, and *Chas. C. Marshall*, special counsel for defendants.

ALLREAD, J. (orally); DUSTIN, J., and FERNEDING, J., concur.
This action is brought in behalf of the city of Greenville by its city solicitor against the members of council and certain other administrative officers of the city, the state board of health, and its members, to enjoin action to establish and construct a sewer disposal plant and make the levy of taxes and issue of bonds therefor, under authority of the act of April 7th, 1908 (99 Ohio Laws, 74; General Code, 1249, *et seq.*), the act being entitled, "An act to authorize the state board of health to require the

purification of sewage and public water supplies and to protect streams against pollution.''

This action originated in the court of common pleas, and upon final judgment in that court was brought here on appeal. The case stands upon demurrer to the amended petition.

The amended petition is in three causes of action and goes into detail as to proceedings and the situation of the sewage, water supply, and stream into which the sewage flows, and the effects thereof upon the health and comfort of the citizens in the vicinity of the stream.

Among the averments of the petition under consideration it appears that the city of Greenville in the years 1890 and 1891 constructed and has since maintained a system of sewers emptying into Greenville creek, and that upon petition of the township trustees of Greenville township proceedings have been had under the act of 1908 resulting in an order of the state board of health, approved by the Governor and Attorney-General, to the city of Greenville ''to purify its sewage in a manner satisfactory to the state board of health.'' That the plans contemplated by the state board of health is a ''sanitary sewage disposal plant,'' involving an expenditure of about $35,000 and a maintenance cost of about $3,000 annually. That this expenditure can only be met by a bond issue, and that the members of council and city officials are about to act solely in obedience to the orders of the state board of health and in fear of the penalties provided for in the act.

The main question argued and presented by counsel relates to the constitutionality of the act. The act contains in section one the following exception or proviso:

''Provided that no city or village that is now discharging sewage into any river which separates the state of Ohio from another state shall be required to install sewage purification works as long as the unpurified sewage of cities or villages in any other state is discharged into said river above said Ohio city or village.''

It is contended that this exception brings the act within the inhibition of Section 26, Article II of the Constitution, which provides that ''all laws of a general nature shall have a uniform operation throughout the state.''

That this act in relation to the public health is one of a general nature is clear, and the question in this respect is whether the act has a uniform operation throughout the state.   To have a "uniform operation throughout the state" does not prevent reasonable and just classification of subjects.   To hold against reasonable and just classification would greatly restrict the efficiency of legislation.

It is also clear that in testing legislative classification doubt must be resolved in favor of the act; but where the classification is colorable, arbitrary, and not founded upon reasonable distinction, the courts are bound to enforce the constitutional provision and declare the repugnancy of the act.

The case of *City of Cincinnati* v. *Steinkamp*, reported in 54 Ohio State, on page 284, involving an act of the General Assembly in reference to fire escapes on buildings of three or more stories, was limited to cities of the first grade of the first class.   It was contended in that case that the act was invalid because of the drastic terms of its provisions and also because it was in violation of the uniformity clause of the state Constitution.   The court held in favor of the act upon the first contention, but held it to be unconstitutional because it was in violation of the uniformity clause, being confined to the city of Cincinnati.   It was distinctly held that the law, affecting the public safety, was one clearly of a general nature and should have a uniform operation throughout the state, and that a classification of a single city would not be reasonable in view of the fact that other three story buildings in other cities throughout the state were just as much entitled to the protection of this act as the city of Cincinnati. Judge Spear in the opinion in this case cites from Boynton, Judge, in the case of *McGill* v. *State*, 34 Ohio State, in relation to the drawing of juries, as follows:

"The difficulty encountered in all cases where a legislative act is alleged to contravene the provisions requiring the uniform operation of law of a general nature, lies in determining what constitutes a law of that nature, within the meaning of the Constitution.   The test is said to depend upon the character of its subject-matter; that if that is of a general, as distinguished from

a local or special nature, existing in every county throughout the state, a subject in which all the citizens have a common interest, then the law is one of a general nature, requiring a uniform operation throughout the state.''

Says Judge Spear:

'' 'Existing in every county throughout the state' means, we suppose, only in every county where the conditions of the statute exist, for in order to be general and uniform in operation it is not necessary that the law should operate upon every person in the state, nor in every locality; it is sufficient, the authorities coincide in holding, if it operates upon every person brought within the relation and circumstances provided for, and in every locality where the conditions exist. But, upon the other hand, it seems equally well settled, a law is not of uniform operation if it exempts a portion of those coming within its terms; that is, if it confers privileges, or imposes burdens, upon some of a class answering a description which are not conferred or imposed upon all others belonging to the same category.''

In the case of *Costello* v. *Wyoming*, reported in the 49th Ohio State, page 202, a case arose under an act of the General Assembly providing for a special method of constructing sidewalks and assessing the cost in villages situated within a county having a city of the first grade of the first class. In other words, the Legislature undertook to classify villages because of their location in a county in which a city of the first grade of the first class was located. The Supreme Court held that that was unreasonable classification. That there was no reason why a village should have a different system of sidewalk construction from other cities and villages simply because of the fact that it was located in the same county with a city of the first grade of the first class. In discussing this proposition Judge Dickman, on page 208 of the opinion, says:

''It has been said that, 'The mode and extent of classification is left to the conscience of the Legislature—its sense of right and public necessity.' But it is now settled beyond controversy that the constitutional provision above referred to is mandatory and that a failure on the part of the Legislature to observe it will be fatal to the validity of a statute. Whether or

not the classification is authorized by the Constitution is for the courts to determine. The people in their wisdom, by prescribing in the Constitution a fixed rule of uniformity for the operation of laws of a general nature, have thereby imposed a limitation upon special legislation, and such limitation can not be broken down or overstepped under the guise of classification. In affirming the principle that classification can not be sanctioned as a pretext for evading the limitation upon special legislation, it was said by Sterritt, J., in *Ayer's Appeal*, 122 Pa. State, 266, 284, in language pertinent of this case: 'Whether, in any given case, the Legislature has transcended its power and passed a law in conflict with that limitation is essentially a question of law and must necessarily be decided by the courts.' "

On page 211 he says: "The requirements for village classification in view of the enactment of laws which shall have a uniform operation throughout the state, will not be satisfied by adopting any common mark or feature that will serve to classify. It was stated by Beasly, C. J., in *State* v. *Hammer*, 42 N. J. Law, 435, 440, that a law may be general in its provisions, and may apply to the whole of a group of objects having characteristics sufficiently manifest and important to make them a class by themselves, and yet, the marks of distinction on which the classification is founded may be such, that the law may be in contravention of a constitutional provision prohibiting the enactment of special laws which regulate the internal affairs of towns and cities. If all that is requisite for the purpose of legislation is to designate villages by some quality, no matter what it may be, which will so distinguish them as to mark them as a distinct class, the constitutional restriction in regard to the uniform operation of laws of a general nature, would be of no avail, as there are few objects that can not be arbitrarily associated. The objects grouped for classification should be distinguished by characteristics sufficiently marked and important to make them a class by themselves."

In the case of *Gentsch* v. *State*, 71 Ohio State, 151, Judge Davis of the Supreme Cuort discusses this same question. From the syllabus we find this rule to be laid down:

"Classification is often proper and sometimes necessary in legislation, in order to define the objects on which a general law is to take effect and in order to definitely apply and effectuate the purposes of the legislation; but when classification is unnecessary, arbitrary, fictitious or otherwise falsely made, and is

used to evade the constitutional limitations under the form of general legislation, such legislation in relation to a class may be both special and unconstitutional.''

And in the opinion on page 165 he says:

''The reported decisions of this court abound with cases of false classification in acts obviously drawn with the purpose of enacting special laws under the guise of general laws.''

We have taken some pains to cite from the authorities upon this proposition because it is important to know how far the courts are required to go in the consideration of special acts to enforce the uniformity clause of the state Constitution and to determine when classification is justifiable and when it is not justifiable.

It is contended on the part of the state that the exception of the Ohio river cities is legitimate classification for two reasons: (1) Because the boundary of the state being at low water mark on the northwest of the Ohio river, it has no proprietory interest in the waters of the river; and (2) because the exception is based upon the contamination of the waters of the Ohio river by flowage from the cities and villages upon the other shore.  As to the first, it clearly appears from the title of the act and its context that the purpose of the act was to purify the water supply and protect the inhabitants from noxious odors and the impure water.  The state of Ohio has riparian rights in the waters of the Ohio river.  Many cities and villages are located upon the Ohio river and the state is bound to protect those of its citizens who live along the Ohio river as well as those living on other rivers, streams and waters throughout the state.  Furthermore, the exceptions exist only so long as other ''unpurified sewage of cities and villages of any other state is discharged'' in the river.  It is therefore apparent that the manifest purpose of this act was not to exclude Ohio river cities upon the ground that it had no jurisdiction over the waters of the Ohio, but because of the facts stated in the second ground.  It follows therefore that the classification can not be sustained upon the first ground, but must be upheld, if at all, upon the second ground

stated, namely, the fact that the waters are contaminated by the sewage from other cities and villages over which the state of Ohio has no jurisdiction. .

It must be conceded that the contamination of a water supply from the other shore over which the state has no jurisdiction, and so that the purification of sewage on this side would be of little or no avail, would justify an exception. A good ground for the classification and exception would be found in the futility of the proceeding.

But an analysis of the excepting clause carries the exception far beyond any reasonable necessity.

The Ohio, which is the only boundary river, extends for three hundred or more miles along the eastern and southern boundary of the state and along thirteen counties, and upon its banks are many large and populous cities of this state. The exception exempts all these cities from the act so long as the "unpurified sewage of cities or villages in any other state is discharged into said river above said Ohio city or village."

Now, we may take judicial notice that three states lie along the Ohio river whose cities may and do discharge sewage into the Ohio river above Ohio cities. Under this exception if the cities or villages of any other state flow sewage into the river the cities below, regardless of distance or possibilities of contamination, are included in the exemption. Take for instance the city of Cincinnati. If all the Kentucky cities and villages are prevented from flowing sewage into the Ohio, yet the fact of flowage from West Virginia or even Pennsylvania exempts Cincinnati. Besides, the act exempts those Ohio cities "now flowing sewage," etc. A city hereafter constructing a sewer system draining into the Ohio river comes within the provisions of the act and is bound to purify its sewage, notwithstanding contamination from the other states, and although another city of the same character is exempt.

This classification can not, in our opinion, be sustained.

It is urged that the exception and not the act should be stricken down as unconstitutional. Some difficulty always arises in deciding when an exception or limitation should be held void and when the main act is to fall.

In the case of *State, ex rel Wilmot*, v. *Buckley et al*, 60 Ohio State, 296, there is a discussion of this question. The question there was as to the validity of the registration law, which was confined to all of the cities of the state except Mansfield and the cities of the fourth grade of the first class, and the court held that the act was not of uniform operation throughout the state. In the opinion it is said:

"It is urged, however, that if this exception makes the act unconstitutional, the exception should be disregarded, and the act held valid as operating uniformly throughout the state. The answer to this is that the court has no law making power, and can not extend a statute over territory from which it is excluded by the General Assembly. A court can hold a whole act unconstitutional because it is not broad enough, that is, because it is not of uniform operation throughout the state; but it can not extend an act which is too narrow, so as to take in territory which was left out by the General Assembly. In the case of an exception, the General Assembly never enacted the statute in the excepted territory, and the court has no power to enact it therein."

The same proposition was up in the case of *State* v. *Lewis*, reported in Vol. 74 Ohio State, page 403, involving the validity of the tax inquisitor law. Under an act of 1885 the county commissioners were authorized in certain counties of the state to employ a tax inquisitor on certain terms. The act of 1888 created a general authority for the commissioners in any county of the state to appoint a tax inquisitor at a certain compensation, but in Section 4 of the act there was a provision that this act of 1888 should not affect the provisions of the act of 1885. Now, it was contended that inasmuch as this was a separate section which provided that it should not affect the provisions of the act of 1885, the separate section should be declared invalid, and the main act extended to cover the entire state, just as it was argued in this case that we should hold this provision excepting the Ohio river cities unconstitutional and eliminate it from the act and leave the act one in general operation throughout the state. The court held in that case that Section 4 was manifestly an exception and qualified Section 1. In this case the exception is in Section 1 and manifestly an exception. The reason for this is given in the case of *Friend* v. *Levy*, 76 Ohio State, page 50,

That was a repeal of the direct inheritance law. In the repeal it was provided that estates in which the inventory had been filed were excepted from the repeal. The Supreme Court held that that exception was invalid, and this observation is made:

"The exception being void, the question arises whether the whole act must be declared unconstitutional. The rule of construction is that, where the void parts of a statute were evidently designed as a compensation for, or inducement to, the valid portions thereof, so that the whole taken together warrants the belief that the Legislature would not have passed the valid portions alone, the whole statute should be held inoperative."

So in this case we are not able to say that the Legislature would have passed this bill if the Ohio river cities had not been exempted from its burdens.

We are therefore of the opinion that the last clause of Section 1 is an exception and not a limitation. That there is a clear intention in the act not to extend its provisions to the Ohio river cities, and that to do so by interpretation would be judicial legislation.

The duty of the court is to construe the act as clearly intended, and so construed it is not of uniform operation throughout the state and is therefore unconstitutional.

There is still another constitutional objection. The penalty clause (Section 6) prescribes a penalty of $500 against individual members of council for failure to take the steps required or to carry out any order of the state board of health. This in effect stifles the judgment of the local governing board and taxing authority. Such a penalty might legally be charged against an administrative officer, having only administrative duties, but to do so against members of a legislative body is destructive of the fundamental theory of our government and substitutes the state board as the real governing board. (*Sanning* v. *City*, 81 Ohio State, 142.)

It is true that the penalty clause is not directly in issue in this case, but it is properly before the court by the averment that the state board is threatening to resort to the penalty clause and that members of the council are about to act solely under force of such threats.

We do not express an opinion as to whether or not the unconstitutionality of Section 6 destroys the whole act, yet conceding that it only applies to the penalty clause we feel justified in expressing our opinion as to this section, in view of the allegations of the amended petition above referred to.

It is not necessary to express an opinion as to the other points made in argument further than to say that the court is inclined to uphold drastic measures provided by the General Assembly for the public health and public safety where the enactment is made in pursuance of the general grant of legislative authority, but such enactment must not be repugnant to any specific provision of the Constitution designed for protection of the people at large.

It follows that in our opinion the act under consideration is unconstitutional and void.

The demurrer to amended petition is therefore overruled.